UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 6/20/2016

JOSE ESTEVEZ, *et al.*,

                          Plaintiffs,

          v.

CONSOLIDATED BUS TRANSIT, INC.;
JSJ SERVICE, INC; and DANA MANCUSO,

                          Defendants.

No. 15-CV-7634 (RA)
No. 15-CV-7995 (RA)
No. 15-CV-7998 (RA)
No. 15-CV-7999 (RA)
No. 15-CV-8000 (RA)
No. 15-CV-8003 (RA)
No. 15-CV-8005 (RA)
No. 15-CV-8006 (RA)
No. 15-CV-8007 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

          Twenty-eight Plaintiffs bring this action against Defendants Consolidated Bus Transit, Inc., JSJ Services, Inc., and Dana Mancuso for breach of contract, negligence, wrongful termination, violation of the federal and New York Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.* and New York Labor Law § 860 *et seq.*, violation of 18 U.S.C. § 1341, and violation of Title VII of the Labor Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 401 *et seq.* Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They argue, *inter alia*, that (1) the claims for breach of contract, negligence, and wrongful termination are preempted by the Labor Management Relations Act, (the "LMRA"), 29 U.S.C. § 185(a), and that the breach of contract claim is also barred by collateral estoppel and the negligence claim by the economic loss doctrine; (2) the WARN Act claims must be dismissed because Plaintiffs fail to allege that Defendants employed and terminated a sufficient number of employees for the federal and state acts to apply and because Plaintiffs fail to allege that there was a mass layoff or plant

closing; and (3) Plaintiff's claim pursuant to 18 U.S.C. § 1341 must be dismissed because there is no private right of action under that statute.  Defendants also argue that the Amended Complaint should be dismissed in full pursuant to New York Judiciary Law § 478 because a non-attorney, Edward Rivera, furnished legal advice to Plaintiffs and drafted and filed the original and Amended Complaint.

Plaintiffs oppose the motion, and cross-move for leave to file a second amended complaint. For the reasons that follow, Defendants' motion to dismiss is granted, and Plaintiffs' motion for leave to file the Proposed Second Amended Complaint ("PSAC") is denied.  The Court will, however, permit the Plaintiffs to file a letter indicating (1) whether they seek to amend their federal and/or state WARN Act claims, and (2) whether they seek to bring LMRDA claims, and, if so, why such claims are not barred by the statute of limitations.

## BACKGROUND

### I.      Facts[1]

Plaintiffs were employees of Consolidated Bus and members of the International Brotherhood of Teamsters, Local 854.  Am. Compl. 2.   Local 854 and Consolidated Bus were signatories to a five year collective bargaining agreement (the "CBA"), dated July 1, 2010 through June 30, 2015.  Am. Compl. Ex. A.   The CBA has sections governing Wages, Discharge, Modification of the CBA, and Vacation.  Am. Compl. Ex. A §§ 2, 4, 6, and 23.  It also has an arbitration provision, which provides that "[a]ll grievances must be filed in writing . . . within five (5) business days from the alleged activity in violation of the Collective Bargaining Agreement." Felsen Decl. Ex. A § 8.[2]

---

[1] Unless otherwise noted, all facts are taken from the Amended Complaint and its attachments.
[2] The version of the CBA attached to Plaintiffs' Amended Complaint omits certain pages; therefore, the Court refers to the version attached to the Felsen Declaration for citations to these omitted sections.

Plaintiffs allege that on August 13, 2013, they were notified that they were permanently laid off, effective immediately.  Am. Compl. 2–3.  The letter notifying the employees of their termination states: "Consolidated Bus Transit, Inc. is required to provide you with this notice regarding the reduction in force pursuant to a federal and state stature [sic] called Worker Adjustment and Retraining Act ("WARN").  Please consider this to be your official notice as required under WARN and specifically under section 2102(b)(2)(A)."  Am. Compl. Ex. B.

Plaintiffs also allege that, on or about August 22, 2013, "the Union Representative made a decision to replace Local Union 854 with Local Union 553 without [their] consent," as a "part of the plan to roll back wages and benefits."  Am. Compl. 4–5.  Although the circumstances supporting this allegation are not made clear in the Amended Complaint, Plaintiffs' Affidavits attached to their opposition to the motion to dismiss indicate that Local 854 effected this alleged scheme by calling a meeting of its members on August 22, 2013, when they knew a majority of members were unable to attend because it was school vacation and the end of the school year.  Dermesropian Decl. Ex. A ¶ 8.  At that meeting, those in attendance were presented with a voting ballot that gave them a choice between an "Open Contract" and "No Work."  *Id.* ¶ 10; *see also* Am. Compl. Ex. G ("[O]n August 22 and 23, 2013, the Union held a vote by bargaining unit employees on whether or not to reopen the contract currently in effect between the Employer and Union, and to ratify certain modifications to the terms of the contract.").  The majority of attendees appear to have voted in favor of an Open Contract, and, as a result, "[h]ourly rates were rolled back, and vacation pay was cancelled."  Am. Compl. 5.  Plaintiffs allege that "under duress, with no place to go [Plaintiffs] held on to the job with a reduction in hourly rates and vacation pay."  *Id.*

## II.  Procedural History

Plaintiffs, proceeding *pro se*, originally filed individual actions against Defendants in New York City Civil Court, County of Bronx, and Defendants removed these actions to the United States District Court for the Southern District of New York on September 28, 2015.  Defendants moved to dismiss on October 30, 2016, and on December 1, 2015, the individual actions were consolidated.  Plaintiffs subsequently retained counsel, and cross-moved for leave to file a second amended complaint on January 20, 2016.

## DISCUSSION

## I.  Motion to Dismiss

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  In applying this standard, courts must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d

Cir. 2010) (internal alterations omitted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). "Although litigants generally may not constructively amend their complaints by raising new factual allegations in their opposition papers, courts often consider such assertions when made by *pro se* litigants. *Smith v. City of New York*, No. 14-CV-443 (LTS), 2015 WL 1433321, at *2 (S.D.N.Y. Mar. 30, 2015) (collecting cases) (internal citation omitted). Here, although Plaintiffs are now represented by counsel, at the time the Amended Complaint was filed, they were proceeding *pro se*. The Court will therefore rely on certain facts asserted in the affidavits accompanying their opposition.

The Court "must construe *pro se* complaints liberally, applying a more flexible standard to evaluate the sufficiency than [it] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000). Consistent with Second Circuit guidance, the Court will interpret the complaint with special solicitude "to raise the strongest arguments that [it] suggest[s]." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### A.  Alleged Representation by Non-Attorney Edward Rivera

Defendants first move to dismiss the Amended Complaint in its entirety on the grounds that the Plaintiffs were represented by a non-attorney, Edward Rivera, when these cases were originally brought in state court. Defs.' Mot. Dismiss 16–17. Specifically, Defendants argue that

Plaintiffs entered into a retainer agreement with Rivera, that they paid him for legal services, that he drafted and filed the original and Amended Complaint, and that he has appeared before the Supreme Court of the State of New York, Bronx County on Plaintiffs' behalf. *Id.* at 17. They also point out that Rivera has previously been found to have engaged in the unauthorized practice of law and has been enjoined from doing so. *Id.* Plaintiffs counter that the issue is moot because they are now represented by counsel, and argue that Defendants' claims regarding the extent of Rivera's involvement are unsubstantiated.[3]

"In the federal courts, 'parties may plead and conduct their own cases personally or by counsel.'" *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (quoting 28 U.S.C. § 1654). "Although § 1654 thus recognizes that an individual generally has the right to proceed *pro se* with respect to his *own* claims or claims against him personally, the statute does not permit unlicensed laymen to represent anyone else other than themselves." *Id.* (emphasis in original and citations and alternations omitted). Accordingly, "[w]hen a non-attorney *pro se* litigant is improperly seeking to represent another entity or individual . . . a district court should refrain from addressing the merits of the claim under a Rule 12(b)(6) motion because to do so could potentially prejudice a properly represented party with standing in a subsequent litigation." *Gabayzadeh v. Taylor*, No. 08-CV-3239 (JFB), 2009 WL 2983013, at *4 (E.D.N.Y. Sept. 4, 2009); *see also Berrios*, 564 F.3d at 134–35.

Rivera's apparent involvement in this case is concerning. The Amended Complaint is accompanied by an affidavit from Rivera, in which he attests that his organization, the Homeward Bound Program for Children, Inc., is "entitled to reasonable compensation for services rendered" as well as "[a]ccounting fees to testify as an agent for the employees to cover the expenses while

---

[3] Plaintiffs, however, appear to concede in their Reply in Further Support for Leave to Amend the Amended Complaint that Rivera prepared the Complaint and Amended Complaint. Reply Mot. Amend 2.

working on this case." Rivera Aff. 8. He further claims that he has spent "more than nine hundred forty five (945) hours . . . on this case." *Id*. There is also a "Disclosure of Quid Pro Quo Contributions," attached to the Amended Complaint, which appears to be a retainer between Plaintiffs and the Homeward Bound Program for Children. Am. Compl. Ex. I. In that agreement, in exchange for "Accounting/Legal Services" fees of $60,900, the Homeward Bound Program commits to assist the bus drivers and matrons in "recover[ing] wages and benefits earned pursuant to a Collective Bargaining Agreement (CBA) from [their] employer [ ] Consolidated Bus Transportation." *Id.* Homeward Bound also represents that, "[w]e will accept responsibilities on the Power of Attorney to represent them before the Court," and that "[i]f we prevail (win), the Court can order Consolidated to pay [Homeward Bound] for the services rendered." *Id.*

Plaintiffs, however, are now represented by counsel who assert that "Mr. Rivera is not associated or affiliated with any of the attorneys representing Plaintiffs, and is not represented by either Counsel of Record." Pls.' Opp. Mot. Dismiss 20. In *Berrios v. New York City Housing Authority*, 564 F.3d 130 (2d Cir. 2009), the Second Circuit instructed that, even where a court finds that a litigant is improperly represented, "it should not dismiss the action without affording such guardian the opportunity to retain counsel or to seek representation from a *pro bono* attorney or agency." *Id.* at 137. Although *Berrios* involved the representation of an allegedly incompetent person, the Second Circuit's reasoning applies here as well. Thus, even assuming Plaintiffs were improperly represented by Rivera earlier in the case, because they have now retained qualified counsel, the Court is not compelled to dismiss this case before considering the merits of Plaintiffs' claims.

**B. State Law Claims: Breach of Contract, Negligence, and Wrongful Termination**

Defendants next move to dismiss Plaintiffs' breach of contract, negligence, and wrongful termination claims on the grounds that they are preempted by Section 301 of the LMRA.  Section 301 seeks "to ensure uniform interpretation of collective-bargaining agreements" and "to promote the peaceable, consistent resolution of labor-management disputes."  *Lingle v. Norge Div. Magic Chef Inc.*, 486 U.S. 399, 404 (1988).  The Supreme Court has therefore held that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute.  *Id.* at 405–6.  Accordingly, a plaintiff's formulation of his or her complaint as based on state tort law is not binding on a court "where rights and obligations under the pertinent collective action agreement are inextricably involved in the underlying claim."  *Doughtery v. American Tel. and Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.").

Plaintiffs' state law clams of breach of contract, wrongful termination, and negligence plainly require interpretation of the CBA, and are therefore preempted by the LMRA.  Plaintiffs' breach of contract claim alleges that Defendants "acted on their [sic] 'outside' agreement by reducing hourly rates and benefits, and vacation pay."  Am. Compl. 6.  Plaintiffs do not identify the agreement to which they refer, but given that the CBA is attached as an exhibit to the Amended Complaint, Plaintiffs assert in the Amended Complaint that the "CBA states the terms of the hourly wages and benefits from July 1, 2010 through June 30, 2015," Am. Compl. 2, and Plaintiffs point

8

to no other agreement to which this could refer, the Court concludes that the Plaintiffs were referring to the CBA in their breach of contract claim.  Indeed, even if there was another yet unidentified agreement to which the Amended Complaint referred, Plaintiffs' claims that Defendants unlawfully reduced their wages, benefits, and vacation pay would still require interpretation of the CBA:  the wages of bus drivers and matrons are provided for in Section 2 of CBA; vacation, including the provision of vacation pay, is provided for in Section 23; and Section 26 and 27 cover health and welfare benefits and pension benefits respectively.  *See Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445, 447 (2d Cir. 2012) (holding that plaintiff's claims that his employer improperly suspended him, reassigned him and reduced his pay could not "be determined without examining the CBA provisions pertaining to the employer's right to manage, direct, and discipline the workforce, and set employee wages."); *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) ("Breach of contract claims founded directly on rights created by collective bargaining agreements or substantially dependent upon analysis of the terms of such agreements are completely preempted by Section 301.") (internal citations and alterations omitted); *Spiegel v. Bekowies*, No. 14-CV-3045 (LGS), 2015 WL 3429107, at *3 (S.D.N.Y. May 27, 2015) ("[T]here is no way to adjudicate breach of contract absent interpretation of the underlying contract.") (internal citation omitted).  To the extent that Plaintiffs allege that these reductions took place by wrongful modification or termination of the CBA, this also requires its interpretation: Section 6 outlines the method for modifying the CBA.  Am. Compl. Ex. A.  Given that Plaintiffs' breach of contract claim is preempted, the Court need not reach the question of whether it is also barred by collateral estoppel.

Plaintiffs' claim for wrongful termination in "breach of employment contract and/or employment policy" also requires interpretation of the CBA.  *Id.* at 7.  Plaintiffs aver that they

were discharged without just cause. *Id.* The only just cause provision that has been brought to the Court's attention is in the CBA, which provides, "[t]he Employer shall have no right to summarily discharge any employee except for conduct detrimental to Employer's business, under authority of the New York City Board of Education, insubordination, dishonesty, theft, drunkenness, assault, chronic absenteeism or chronic lateness." *Id.* Ex. A § 4. Section 4 also outlines the grievance procedure for the union to contest discharge. *Id.* ("Immediately upon discharge, the Employer shall notify the Union in writing, by certified mail, of alleged reasons for the discharge. Should the Union dispute the discharge and the matter cannot be adjusted between the parties within forth-eight (48) hours, it shall be settled by arbitration as provided in Section 8."). There is therefore no way to determine whether Plaintiffs' alleged terminations were wrongful without interpreting the CBA. *See Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 397–98 (D. Conn. 2009) ("[R]esolution of the plaintiff's wrongful discharge claim is dependent on interpretation of the CBA because any limitation on [defendant's] right to terminate the plaintiff's employment would arise from the CBA and depend upon the meaning and interpretation of the 'just cause' provision."); *Sheehan v. U.S. Postal Serv.*, 6 F. Supp. 2d 141, 148 (N.D.N.Y. 1997) (same); *Heaning v. Nynex–New York,* 945 F. Supp. 640, 645 (S.D.N.Y. 1996) (Plaintiff's claim that he was discharged without just cause was "indisputably" preempted where duty was drawn from the language of the CBA.); *Anderson v. Coca Cola Bottling Co. of New York, Inc.*, 772 F. Supp. 77, 81 (D. Conn. 1991) (dismissing breach of contract claim for termination without just cause because it required interpretation of the CBA's just cause provision).[4]

---

[4] Plaintiffs argue that it is not necessary to interpret Section 4 because they do not argue that they were discharged for "conduct detrimental to Employer's business." Pls.' Opp. Mot. Dismiss 12. But Plaintiffs' argument highlights exactly why it is necessary to interpret the discharge section of the CBA: to understand the circumstances in which the employer is permitted—and not permitted—to discharge an employee requires such interpretation.

Plaintiffs also allege that their terminations violated the "progressive discipline policy contained in its policy manual," and that "the policy manual constituted an implied contract of employment, such that plaintiff's employment could only be terminated for good cause and only in conformity with the provisions of defendant's policy manual."  Am. Compl. 7.  First, this allegation, "unaccompanied by any language from the employee handbook that purportedly created the contract," is insufficient to state a claim.  *Willis v. Verizon New York, Inc.*, No. 11-CV-5078 (JG), 2012 WL 2370125, at * 6 (E.D.N.Y. June 22, 2012) (citing *Blaise-Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S. 2d 41, 42 (N.Y. App. Div. 1993).  Second, the CBA expressly prohibits employers from "enter[ing] into any individual agreement with any of the employees covered by [the CBA]." CBA § 6.   Lastly, even if Plaintiffs could sufficiently allege that the employee handbook constituted a contract, the Court would still have to refer to and interpret the CBA's discharge provision to determine whether the termination was wrongful and to understand the procedure to resolve such grievances.  *Civardi*, 603 F. Supp. 2d at 398 (holding breach of contract claim pled based on employee handbook preempted because it required interpretation of CBA); *Dulay v. United Techs. Corp.*, No. 93-CV-2020 (JAC), 1994 WL 362149, at *4 (D. Conn. June 10, 1994) ("While the plaintiff's breach of implied contract claim is not based directly on the CBA, the court cannot evaluate the validity of this claim without determining whether the CBA was intended to be the sole agreement between the parties.").  Plaintiffs' wrongful termination claim is therefore dismissed on preemption grounds.

Plaintiff's negligence claim is also preempted.[5]  The Amended Complaint alleges that "Defendant[s] failed to perform the duties in the written contract in a safe and effective manner leading to the injuries sustained by Plaintiffs.  Vacation pay we earned by June 2014 and by June

---

[5] Given that Plaintiffs' negligence claim is preempted, the Court need not reach the question of whether it is also foreclosed by the economic loss doctrine.

2015 was not paid; hourly wages were rolled back on September 2013." Am. Compl. 6. As discussed above, the written contract that the Amended Complaint refers to is presumably the CBA; therefore, this claim is preempted by the LMRA and must be dismissed.

Plaintiffs argue that their negligence claim does not flow from the CBA, but is instead predicated on Defendants alleged "violation of statutory prohibitions against discrimination." Pls.' Opp. Mot. Dismiss 18. This argument is contradicted by the language of the Amended Complaint, which states, "Defendant failed to perform the duties in the *written contract*." Am. Compl. 6 (emphasis added). In any event, "alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *4 (S.D.N.Y. Sept. 20, 2007) (collecting cases); *see also Williams v. H.N.S. Mgmt. Co.*, 56 F. Supp. 2d 215, 221 (D. Conn. 1999) ("[P]laintiff cannot circumvent statutory remedies available for claims of employment discrimination and harassment by alleging a common law claim of negligence in discipline or harassment."); *Karam v. Cnty. of Rensselaer*, No. 13-CV-1018 (MAD), 2016 WL 51252, at *21 (N.D.N.Y Jan. 4, 2016) ("A tort claim cannot arise in employment settings absent some other 'independent legal duty' owed by the employer beyond the anti-discrimination statutes.") (internal citation omitted).[6] Plaintiffs' claims for breach of contract, wrongful termination, and negligence are thus dismissed.[7]

---

[6] Plaintiffs' negligence claim also fails because it does not allege a duty distinct from the Defendants' contractual duties. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 837 F. Supp 2d 162, 203 (S.D.N.Y. 2011) ("Merely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.") (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987)).

[7] To the extent that the Amended Complaint can be read to raise a claims of age discrimination, the bare allegation that Defendants and Local 854 "acted in concert to discriminate [against] the Union members who have been working for Defendants for more than eight (8) years; some have been with the company for more than twenty (20) years, with new employees" is insufficient to support an inference of discrimination. Am. Compl. 9.

### C.  Federal and State WARN Act Claims

Defendants next seek to dismiss Plaintiffs' federal and state WARN Act claims on the grounds that Plaintiffs have failed to allege that Defendants employed and terminated a sufficient number of employees to be found liable under these statutes.  Defendants also argue that Plaintiffs have failed to allege a mass layoff or plant closing because, according to Plaintiffs' allegations, they retained their jobs.

The federal WARN act requires an employer with more than 100 full-time employees to give its workers 60 days' notice before any plant closing or mass layoff.  29 U.S.C. §§ 2101–02.  A mass layoff is defined as "a reduction in force which is not the result of a plant closing and results in an employment loss at the single site of employment during any 30-day period for at least 33 percent of the employees (excluding any part-time employees) and at least 50 employees (excluding any part-time employees)."  29 U.S.C. § 2101(3).  The state WARN act requires employers with 50 or more full-time employees to give 90 days' notice before a plant closing or mass layoff  *See* NYLL §§ 860–(a)(3), (b)(1).  A "mass layoff" is defined as "a reduction in force which is not the result of a plant closing and results in an employment loss at a single site of employment during any thirty-day period for at least thirty-three percent of the employees (excluding part-time employees) and at least twenty-five employees (excluding part-time employees)."  *Id.* § 860–a(4).

Plaintiffs do not oppose Defendants' motion to dismiss this claim, nor include WARN Act claims in their PSAC.  It is not clear, however, that Plaintiffs have abandoned this claim because they do allege additional facts in the affidavits accompanying their opposition to the motion to dismiss that appear to remedy the pleading deficiencies identified by Defendants.  Plaintiffs assert that "there were approximately seventy (70) school bus drivers and seventy (70) matrons, totaling

one-hundred and forty (140) individuals, who were employed by Defendants and who were members of Local 854.  On August 13, 2013, the entire class of one-hundred and forty (140) employees/members were either handed or mailed a letter terminating their employment with Defendants effective immediately."  Estevez Aff. ¶ 5–6.  Thus, while the Court will dismiss this claim due to the pleading deficiencies identified by Defendants, it will give the Plaintiffs an opportunity to indicate whether they seek to amend this claim.  Plaintiffs shall accordingly submit a letter no later than July 1, 2016 notifying the Court whether they seek an opportunity to amend these claims.

### D.  18 U.S.C. § 1341

Defendants next move to dismiss Plaintiffs' § 1341 claim because there is no private right of action available under this statute.  Plaintiffs do not oppose this portion of Defendants' motion, and, in any event, Defendants are correct that no private right of action is available under this provision.  *See Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 422 (2d Cir. 2005) ("The law in this circuit is clear that this criminal statute does not support any private right of action."). Accordingly, Plaintiffs' § 1341 claims are dismissed.

### E.  Potential LMRDA Claims

Plaintiffs argue in their opposition to Defendants' motion to dismiss that the Amended Complaint also sought relief under the Labor Management Reporting and Disclosures Act, 29 U.S.C. § 401 *et seq.*,  and "Defendants do not move to dismiss or even address Plaintiffs' claims under the LMRDA." Pls.' Opp. Mot. Dismiss 10.  Plaintiffs, however, do not include LMRDA claims in the Proposed Second Amended Complaint, but instead indicate that they "are likely to be brought" because "Plaintiffs were clearly denied the right to vote in its entirety, including their

14

rights to vote on amendments, attend membership meetings, and participate in deliberations." *Id.* at 7.

If Plaintiffs seek to bring an LMRDA claim, they shall so notify the Court in their July 1 letter. In that letter, they should also indicate why any such claims are not barred by the six-month statute of limitations. *See Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1053 (2d Cir. 1988) (holding six-month statute of limitations applied to LMRDA claim that union violated members' equal voting rights under Section 101(a)(1)); *Connor v. Elmhurst Dairy, Inc.*, No. 13-CV-4769, 2016 WL 126373, at *3 (E.D.N.Y. Jan. 11, 2016) (six-month statute of limitations applies LMRDA action "where claims have directly implicated the collective bargaining relationship."). If Defendants would like to respond, they shall do so by July 8.

## II.  Motion to Amend

The Court next turns to Plaintiffs' cross-motion to amend. In the PSAC, Plaintiffs seek to add claims for declaratory judgment, breach of fiduciary duties, violation of 29 U.S.C. § 158, unjust enrichment, and attorney's fees, and to amend their breach of contract, negligence, and unlawful termination claims. For the reasons that follow, the Court denies Plaintiffs leave to amend because the proposed amendment is futile.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend," however, "may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110–11 (2d Cir. 2001)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Lotes*

*Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 416 (2d Cir. 2014) (citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, in turn, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citation and internal quotations omitted).

### A.  Claim 1: Declaratory Judgment

Plaintiffs first seek to add a cause of action for "Declaratory Judgment: Injunctive Relief." With respect to injunctive relief, "injunctions are remedies, not causes of action"; therefore Plaintiffs cannot state a claim on this basis.  *Messinger v. JPMorgan Chase Bank, N.A.*, No. 13-CV-2444 (AJN), 2014 WL 904528, at *2 (S.D.N.Y. Mar. 7, 2014) (quoting *Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 406 (S.D.N.Y. 2010)).

Defendants also seek a declaratory judgment "that Defendants' actions are unlawful." PSAC ¶ 68.    As Plaintiffs' coercive claims will necessarily resolve this question, Plaintiffs' declaratory judgment claim is duplicative and unnecessary.  *U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12-CV-6811 (CM), 2014 WL 998358, at *9 (S.D.N.Y. Mar. 14, 2014)  ("The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'") (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010); *see also Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods, Inc.*, 958 F. Supp. 2d 488, 507 (S.D.N.Y. 2013) ("It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction.") (quoting *Camofi Master LDC v. College P'ship.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006).

### B. Claims 2 and 3: Violation of Fiduciary Duties

#### 1. Labor Management Relations and Disclosure Act, 29 U.S.C. § 501

Defendants next oppose Plaintiffs' motion to add a claim that Defendants breached the fiduciary duties owed to Plaintiffs in violation of 29 U.S.C. § 501. Section 501, by its terms, applies to representatives of labor organizations, not employers. *See, e.g.*, *Giraldo v. Rosen*, 355 F. Supp. 54, 57 (S.D.N.Y. 1973) ("The purpose of the section is to insure that unions do not violate their fiduciary responsibilities to their members."); *D'Antonio v. Metro. Transit Auth.*, No. 06-CV-4283 (KMW), 2010 WL 1257349, at *8 (S.D.N.Y. Mar. 31, 2010) (holding § 501 claim could not be brought against non-union officials); *Morrissey v. Curran*, No. 69-CV-442, 1972 WL 1051, at *5 (S.D.N.Y. June 29, 1972) (§ 501 does not apply to employer-appointed trustees), *aff'd*, 483 F.2d 480 (2d Cir. 1973); *Tucker v. Shaw*, 308 F. Supp. 1, 3 (E.D.N.Y. 1970) (same). Plaintiffs therefore cannot state a claim against Defendants—all of which are employers—based on this statute.

#### 2. New York Labor Law § 720, et seq.

Plaintiffs next seek to add a breach of fiduciary duty claim pursuant to New York Labor Law (the "NYLL"), § 720 *et seq.* It is not clear, however, which provision of the NYLL gives rise to the employer's alleged fiduciary duty; Plaintiffs make only the generic allegation that "Defendants occupy positions of trust in relation to Plaintiffs and all employees of Defendants," PSAC ¶ 77. Indeed, only two provisions of the identified sections apply to employers, both of which prohibit them from "[p]articipat[ing] in or induc[ing] any conduct or act which violates any of the obligations of any officer or agent of a labor organization." NYLL §§ 724, 725(3). Plaintiffs' conclusory and speculative claims, however, do not state a claim under either provision. Plaintiffs allege that Defendants "planned the premature and unlawful termination of the CBA without

giving notice to Defendants [sic]," PSAC ¶ 44, and that Defendants colluded so as to call a "meeting knowing that the majority [of union members] would not be able to attend." *Id.* ¶ 49. But Plaintiffs do not assert any facts to make these conclusory allegations plausible. Plaintiffs also allege that the president of Local 854 Dany Garo "visited a garage in the Bronx where Plaintiffs work" approximately one month before the Plaintiffs' termination and "had a conversation with Victor Irizarry, one of the Defendants' drivers," in which he "stated that Local 854 will merge with Local 553." *Id.* ¶¶ 40–42. Contrary to Plaintiffs' argument, however, this alleged meeting and disclosure does not support Plaintiffs claim that it is therefore "obvious that Defendants and Local 854, which are believed to be working in collusion with each other, knew and planned ahead of time to terminate the CBA" and had sufficient time to send advanced notice of the alleged layoffs. Pls. Opp. Mot. Dismiss 5. In sum, Plaintiffs have failed to state a NYLL claim for an employer's breach of fiduciary duty; the proposed amendment is thus futile.

Plaintiffs' breach of fiduciary duty claim also fails because it would require interpretation of the CBA and is accordingly preempted. Plaintiffs allege that, "Defendants' unlawful termination of Plaintiffs, breach of the CBA, unlawful reduction of Plaintiffs salaries, and misappropriation of funds,[8] amount to a breach of fiduciary duty . . . . By virtue of the foregoing, Defendants have violated provisions of the New York Labor Law and the CBA by breaching the fiduciary duties and by engaging in prohibited actions." PSAC ¶¶ 78–79. Plaintiffs specifically allege that Defendants breached their fiduciary duties by acting in contravention of the CBA; there can therefore be no dispute that this claim requires interpretation of the CBA. With respect to the claims that Defendants unlawfully terminated Plaintiffs and reduced their salaries, as already discussed, *see supra* at 7–11, as far as the Court is aware, the only basis for these duties is the CBA

---

[8] With respect to the allegation that Defendants misappropriated certain funds, Plaintiffs offer no factual support for this claim; therefore, this claim fails on plausibility grounds.

itself; therefore, these claims rely on an interpretation of the CBA and are also preempted.  *See, e.g.*, *Buote v. Verizon New England*, 190 F. Supp. 2d 693, 703 (D. Vt. 2002) ("To the extent that [plaintiff] claims breach of provisions of the Labor Contract, his breach of contract and fiduciary duty claims are necessarily preempted by the LMRA.") (footnotes omitted); *Thurber v. United Parcel Serv., Inc.*, No. 05-CV-159, 2007 WL 3046261, at *3 (D. Vt. Oct. 16, 2007) ("[Plaintiff] has failed to demonstrate the existence of any contract between the parties except the CBA; any fiduciary duties UPS owed to Thurber are accordingly defined therein.").

### C.  Claims 4, 8, and 10: Breach of Contract, Unlawful Termination, and Unjust Enrichment

For the reasons discussed above, *see supra* at 7–11, Plaintiffs' proposed amendments to their breach of contract, negligence, unlawful termination and unjust enrichment require interpretation of the CBA and are thus preempted by the LMRA.  *See* PSAC ¶¶ 85–86 ("Defendants reduced Plaintiffs' salaries, stripped away their earned vacation, and cancelled other benefits.  As a direct and proximate cause of Defendants' breach of the CBA, Plaintiffs suffered damages); *Id.* ¶ 107 ("Plaintiffs were unlawfully terminated in violation of the CBA, almost two (2) years before the expiration of the CBA."); *Id.* ¶ 114 ("Defendants have been unjustly enriched as a result of their unlawful reduction in salaries and cancellation of vacation days.").

### D.  Claim 5: Violation of § 301 of the LMRA

Plaintiffs' fifth proposed cause of action, which alleges that Defendants acted in violation of § 301 of the LMRA, is untimely.   Plaintiffs are therefore denied leave to amend.

"Section 301 of [the LMRA], 29 U.S.C. § 185, governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under the scheme of the National Labor Relations Act (the "NLRA")."  *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997) (citing *DelCostello, v. Int'l Bhd. of Teamsters*,

462 U.S. 151, 164 (1983)).  "In order to provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, the Supreme Court has held that an employee may bring suit against both the union and the employer."  *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) (citing *DelCostello*, 462 U.S. at 164).  "The employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee 'must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'"  *Id.* (quoting *DelCostello*, 462 U.S. at 165).  "A hybrid § 301/fair representation claim is subject to a six-month statute of limitations which governs the claims against both the employer and the union."  *Arnold v. 1199 SEIU*, 420 F. App'x 48, 50 (2d Cir. 2011) (internal citations and quotations omitted); *see also McKee v. Transco Products, Inc.*, 874 F.2d 83, 86 (2d Cir. 1989) ("Plaintiffs cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only their employer.").  "The limitations period . . . 'begins to run when the employee knew or should have known of the breach of the duty of fair representation.'"  *Carrion*, 227 F.3d at 34 (quoting *White*, 128 F.3d at 114).

Plaintiffs filed this action on July 21, 2015.  They allege that they were unlawfully terminated on August 13, 2013.  PSAC ¶ 56.  They further allege that Defendants breached the CBA on August 22, 2013 when Local 854, purportedly in collusion with the Defendants, held a meeting where the employees were told that "if [they] wanted to work, then they had to vote to 'open contract' in order to authorize Local 854 to reopen the CBA." PSAC ¶ 57-58.  Plaintiffs thus knew or should have known of the alleged breach well over six months prior to filing this action.  Plaintiffs' LMRA claim is barred as untimely.

### E.  Claim 6: Negligence

Plaintiffs' amended negligence claim fails to remedy the deficiencies identified above. *See supra* at 11–12. First, Plaintiffs' allegation that "Defendants violated its own policies and responsibilities towards Plaintiffs" without identifying any such policies or responsibilities, is too conclusory to state a claim.  PSAC ¶ 95. Second, the allegations that Defendants discriminated against Plaintiffs based on the length of their tenure does not give rise to a tort under New York law. *See Baguer*, 2007 WL 2780390, at *4.  Plaintiffs also concede in their Reply that their negligence claim is premised on "a reasonable duty of care on the part of Defendants, under common law, to follow customary practices and procedures set forth in the CBA."  Pls.' Reply at 7.  This claim is thus also preempted by the LMRA.  *See Almonte v. Coca-Cola Bottling Co. of N.Y., Inc.*, 959 F. Supp. 569, 577 (D. Conn. 1997) (holding negligence claims were preempted by LMRA where they depended on interpretation of the CBA).

### F.   Claim 7: Violation of 29 U.S.C. § 158

Plaintiffs' seventh cause of action alleges that Defendants violated 29 U.S.C. § 158(a)(3), which prohibits an employer from discriminating against any employee "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."  "This court, however, "lacks subject matter jurisdiction to entertain plaintiff's claims because [the National Labor Relations Board (the "NLRB")] has exclusive jurisdiction over these claims." *Husain v. Smarte Carte Inc.*, No. 10-CV-1844 (KAM), 2011 WL 1642591, at *3 (E.D.N.Y. May 2, 2011); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir. 2005) ("The Supreme Court held in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–47 (1959), that neither state nor federal courts have jurisdiction over 'activity [that] is arguably subject to § 7 or § 8 of the Act,' *id.* at 245.") (alteration in original); *Benjamin v. Health & Hosps. Corp.*, No. 07-CV-2487 (KAM), 2009 WL 2959622, at *11 (E.D.N.Y. Sept. 11, 2009),

*aff'd*, 394 F. App'x 829 (2d Cir. 2010) (holding amendment would be futile where "the court lacks subject matter [jurisdiction] to entertain plaintiff's NLRA claims, as the National Labor Relations Board has exclusive jurisdiction over such claims"); *Commer v. Am. Fed'n of State, Cty. & Mun. Emps.*, 272 F. Supp. 2d 332, 339 (S.D.N.Y. 2003), *aff'd*, 390 F.3d 203 (2d Cir. 2004) ("Congress has entrusted enforcement of the NLRA to the [NLRB].  Accordingly, the Court may not hear Commer's claim under 29 U.S.C. § 158.") (internal citation omitted).

### G.  Claim 9: Attorney's Fees

Finally, Plaintiffs' ninth cause of action is for attorney's fees.  Attorney's fees, however, are a form of relief, not a claim upon which relief can be granted.  *Jaffe v. Capital One Bank*, No. 09-CV-4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010).  Plaintiffs are therefore denied leave to amend to add this claim.

### CONCLUSION

Defendants' motion to dismiss this action is granted, and Plaintiffs' motion for leave to file the PSAC is denied.  As stated above, Plaintiffs may submit a letter to the Court by July 1, 2016 indicating (1) whether they seek to amend their federal and/or state WARN Act claims, and (2) whether they plan to bring LMRDA claims, and, if so, why such claims are not barred by the statute of limitations.  Defendants shall have until July 8, 2016 to respond.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 12 and 24.

SO ORDERED.

Dated:    June 20, 2016
          New York, New York

_____
Ronnie Abrams
United States District Judge

22